Case number 21-7128, State of Libya affiliant v. Strabag SE. Mr. Perla for the affiliant, Mr. Berndt for the affiliate. Morning Council, Mr. Perla, please proceed when you're ready. Good morning, and may it please the Court. The fundamental defect in this arbitral award is that the Tribunal failed to decide an issue submitted by the party. Who is entitled to keep 98 million euros that Libya advanced to Strabag for work that was never done? Even though the contracts provide for who gets the money, the arbitrators refused to decide the issue because they were worried that if they credited Libya for the advance payments, Libya might get a double recovery if it later called on, wrongfully called on, certain guarantees securing those funds. What did they do instead? They said, and I quote, this matter should be addressed, must be addressed outside the context of this arbitration. In doing so, they awarded Strabag, in effect, a double recovery. The arbitrators believe this was acceptable because after balancing the equities and their concerns over the status of the guarantees, they found it was more acceptable, and for their own sense of good order and fundamental fairness, to put the risk on Libya rather than Strabag. You're focusing on one sentence at the end of that section of the order, but if you read the section in its entirety, they do seem to reject the various grounds that were asserted for the set-off. They say there's no unjust enrichment, there was no misuse of funds, Libyan law doesn't compel this. It seems like they decided it against you. And then they have this aside at the end that had they gone the other way, they would have created a fairness problem, and it might or might not be right, but it sure seems like they decided the issue. Your Honor, I don't believe that they decided the advance payments issue, which is ultimately the issue that was before them. Who's entitled to keep this money? And when you look at the entire structure of the section, section nine, that deals with this issue, it identifies it as the issue of the advance payment. And then it prompts a footnote that refers to the dissent and says this section of the award should be read in conjunction with the dissent. And when you read the dissent, it's criticizing the majority precisely for failing to, and I believe it is, having performed a task partially completed because they had failed to decide the issue of the advance payment. The majority does not rebut or reject that characterization of what they did in that section. And when you go through it, you realize that nowhere in the section do they say that Strabag is entitled to keep the money. In fact, nowhere in the award do they make that conclusion. And multiple times they say, we're not conducting a global settlement of accounts. We're not doing a wrapping up of who owes what to who ultimately under these contracts. And they focus on the guarantees, which is a very critical point. Their obsession with the guarantees shows that they weren't deciding the issue of the advance payments because otherwise, if they had intended to say Strabag is entitled to keep the money, they wouldn't be preoccupied about the guarantees. It would have been clear to the parties that Libya didn't have a right to call on those guarantees. In fact, multiple times Libya throughout the litigation has conceded that if the award had clearly said that Libya was entitled to this money, it would not have a right to call on the guarantees afterwards. And then you have... So you view that issue to be a closed one, whether Libya has the right to call on the guarantees? I'm sorry, I didn't hear you. You view that to be a closed issue, whether Libya has a right to call on the guarantees? Well, that is a status that is uncertain right now, as the tribunal pointed out, because there is no determination of liability, who is entitled to those funds. So it remains an issue that must be addressed outside the context of this arbitration as the arbitrators concluded. Do you think the arbitrators contemplate doing anything more when and if this is addressed outside the context of this arbitration? If I understand correctly, your honor, yes, they contemplated that more needed to be done outside the context... No, do they contemplate doing more? They, the arbitrators? Yes. They don't feel like they need to go any further because they believe that after balancing the equities, they couldn't get themselves to say who owed the money to whom. But that doesn't mean... Which is another way of saying that you all sought a set off from the arbitrators and they declined to give it to you. Again, your honor, I think the issue is not a set off. It is who is entitled to keep this money? What do we do about these advance payments that Strabag did not do any work to earn? So this is a real commercial conundrum because it's important to understand that the advance payments were not a signing bonus that they just get to keep from day one. It was a loan to finance the upfront costs of the project. So here they are holding 98 million euros of Libya's money and there is no determination as to whether they have to return that money, even though they haven't earned it. They haven't done the work and they've never claimed that they've done the work to earn those funds. But your honor, this brings me to the other point, which is excessive powers. I'm sorry, which is? Excessive powers. Say it again? What? Excessive powers. Yes. Okay. So this is the other grounds upon which the award should be. Before you go to that, can I just ask you about a different part of your brief? You say in your brief, and I'm quoting here, that it's a, you say the panel's decision is lawless because the majority considered good order and fundamental fairness. But as I read their decision, they only considered fairness after they rejected all of your other legal arguments. So, I mean, how can you call this decision lawless? Well, your honor, lawless in the sense that they didn't rely on a rule of law or a contract. They rejected every one of your arguments and then considered fairness at the end. Well, they rejected reasons for not applying a setup, but they didn't resolve the underlying issue which was submitted to them, which is the question of the administrative payments. And we know that they didn't do that because otherwise they wouldn't have been so preoccupied about the status of the guarantees and Libya potentially getting a double recovery. That issue just would not remain because it would have made it clear that Stronbeck was entitled to keep that money. Is there any evidence in the record that Libya, that there was a double recovery or even could be? I couldn't find any numbers where I could even figure that out. Yes, your honor. Where is that? Well, you know, I can point you to a couple of places. One is the damages section towards the end of the award where the tribunal concludes that Stronbeck is entitled to get about 74 million euros plus costs and interests. And then in the advanced payment section, section paragraph 876 or 77, right around there, right around there. The tribunal says that Libya paid about 98 million euros in advances that were not earned. So if they weren't earned, that means that the money was Libya's money. And if they use the money as Stronbeck claims to buy equipment, to cover costs, to continue running the projects, even though they were getting late payments, that means that Libya has already paid for those damages. So to make, to give them damages for those same expenses on the award, it's basically making Libya pay twice, once with the advance payments, and then again, by having to pay on this award. And the problem in addition to the finality point is that the tribunal looked to their own sense of good order and fundamental fairness. There was no rule of law that required them to resolve the issue of the advance payments together with the issue of the guarantees. Their mandate was to determine what the party's rights and obligations were vis-a-vis each other under these contracts. And instead of doing that, they were concerned, they were, they wringed their hands saying, well, we don't know what's going to happen with these guarantees. We can't do anything about that. And because they believed it would be unfair to Straubach, they decided to put the burden on Libya. And that is an excess of powers because they, when a panel decides an issue based on their own brand of economic fairness, rather than the rule of law, it has to be vacated as an excess of power. Now, add a couple points. You don't think in a contract case, an arbitrator can ask whether or not a particular element of damage would amount to a double recovery? Yes, but Your Honor, that's not what they determined. They didn't make a determination as to whether Straubach was entitled to the advance payments and therefore would be subject to, as they put it, double jeopardy, the inverse, if Libya called on the guarantees. And they left open whether Libya would be getting a double recovery if they called on the guarantees after being credited for the monies in the award. So, the issue was not, they don't say, are we granting a double recovery? And this is why we're avoiding it. They're saying, we're concerned that there might be an issue of double recovery. We don't have a way to control for that. So, we're going to avoid putting Straubach in the situation of being, Your Honor, I see that my response. Okay. We don't want to put Straubach in a situation of being at a disadvantage if Libya were wrongfully to call on the guarantees. So, we're just going to avoid the issue altogether and let the parties resolve it somewhere else. Can I ask you one question and then we will give you a bit of time for rebuttal. You've, in your briefing and then this morning, you've said several times that there's a difference between the set-off issue and who's entitled to advance and ask for a decision on that in any post-decision submission to the arbitral panel or even to the district court? Yes, Your Honor, to both. And the issue was clear that the underlying basis for the requested set-off was the advance payments issue. That was the issue that was before the tribunal. And that is what the tribunal focused on. You look at the title of section nine and it's not the set-off, it's the advance payment. That is what they knew that they had to decide and that is what they left open as the dissent. But did you point that out? I know you're making the distinction now, but did you submit something to the tribunal? Maybe you did. Yes, Your Honor, we did. And I can get you a joint appendix that is on rebuttal if that's okay. Thank you. Thank you. Mr. Byrne. Thank you. Thank you, Chief Judge Mendoza, and may it please the court. Livia's argument this morning has asked in a number of ways for this court to essentially displace the findings of the arbitration tribunal, both with respect to the factual findings that it made in reviewing the claims before it, but also with respect to what the issue was before the tribunal. So several times this morning, Livia has indicated that there's a distinction between asking for a set-off and asking for the advance payments. But I would this court to paragraph 74 and 880 of the arbitral tribunal's decision in which it said, Livia only requested a set-off, not a counterclaim for unpaid balances, doesn't go on to talk about asking for the advance payments or the guarantees. Rather, Livia only requested a set-off. So that was the issue that was submitted to the tribunal and the tribunal resolved it. Livia admits on, now concedes on page 13 of its opening brief that the tribunal quote, specifically denied Livia's request for a set-off, unquote. And Livia further admits on page six of its reply brief that the tribunal rejected the particular arguments that Livia advanced in favor of its set-off claim. That, particularly given the deferential standard review, when a court looks at an arbitral award, should be the beginning and end of this case. Did they decide, they firmly decided not to order a set-off, as I read it, but they didn't decide whether the letter of credit was still in place, which would enable the double recovery, right? That's right. So, I mean, don't they have to resolve that one way or the other? I mean, there's either going to be a double recovery one way or the other, depending on how you treat the advance payments, right? Yeah, no, I don't think that's right. So, a couple of points. First of all, the only question before the tribunal was a question of whether Livia was entitled to a set-off from Strava. And so, Livia presented several arguments in favor of why it thought it was due a set-off, either under the terms of the contracts themselves or under the terms of Libyan law, unjust enrichment, so on and so forth. I mean, suppose the letter of credit had expired. There's no question about that. And the harm to Strava is whatever it is without reference to the advance payments. I mean, how could you, and that's what's awarded. Right, so let me help clarify. The reason why there's no double recovery, and I think this is indicated by the tribunal's decision, is that when you're talking about, on the one hand, Livia's claims for damages, and on the other hand, the advance payments, which Livia is referring, these are sort of separate pots of money. These aren't overlapping pots of money. One way of thinking about it is that, imagine that- I thought they were advance payments for performance only, under like- They are for performance under the contract, but Livia's claims for damages were on things like, for instance, payment certificates for work that had already been done, and other damage- No, but forget about any affirmative claims Livia might have asserted, but did not. Just in terms of figuring out what damages your client would be entitled to. Right, so their claim on the advance payments was premised on the idea that this was money that was sitting out there that Livia had paid to Stravag that had not been used, that was basically sitting in Stravag's pocket. Right, it's like an advance on performance. Yeah, and what the tribunal found, and this is, I believe, at paragraph 900, is that the testimony of the witnesses established to the tribunal's satisfaction that not only the advance payments, but actually substantial additional funds from Stravag had actually been deployed in service of the contract. So this is like a circumstance where, imagine that you hired a contractor to build a home, and the house costs $100,000, and the contractor is given an advance payment of $10,000 to start work. So work happens for a month, the contractor sends a bill for $8,000 for the work that's been done to date, and it takes out a little bit, the proportional amount of the advance payment, but no payment is ever made. And so the contractor then takes the money from the advance payment and puts it towards the work of building the house, buys the lumber, buys the paint, hires people to do that work. That's sort of the circumstance that we're in now. So our claim was for work that we had already done, Livia is now claiming for the advance payments, but the advance payments have already been deployed for Livia's benefit in terms of putting forward the work under the contract. And that's what the tribunal found. And so that's why the district court found there is no double recovery here. The money has already basically been used for Livia's benefit. On the other hand, there really was a risk of double jeopardy to Livia, I'm sorry, to Stravag had the tribunal gone in a different direction because Livia's witnesses indicated that depending on how the arbitration was going to come out, they were going to call on these guarantees. And the guarantees are in a sense a little bit separate from the ultimate, or at least Livia's argued that they're separate from the ultimate question of who gets what under the contract. And so Stravag would have been a real risk if Livia attempted to call on the guarantees. And I think one of the things that the tribunal, which I think was fair for it to consider, after all, Livia is invoking these equitable arguments, unjust enrichment, restitution. One of the things I think that the tribunal appropriately considered is, okay, well, what are the consequences? Would it really be just? Is this a circumstance that calls for unjust enrichment and restitution? Those are among the things that the tribunal looked at. But the ultimate question, I think, before this court, isn't whether the tribunal got it right or wrong. It's simply the question of whether the tribunal decided the questions that were before it. This court has indicated that as long as the tribunal is even arguably acting within the scope of its authority, or construing or applying the contract or fee-to-hand, there's no basis to vacate the tribunal's decision, even if the court were to disagree with the tribunal's legal or factual findings. And here, we do think that those findings, they were not the product of some sort of material miscalculation or the tribunal's lawless mistrust of Livia and civil servants, as Livia has argued. Rather, the tribunal's reasoned analysis of the contracts, the treaty, and the law. And therefore, Livia falls well short of the very heavy burden that bears to show that not only that the district court, which is in deference, that its findings should be reversed, but also that the tribunal's board should be vacated. I have one quick question, just about the issue that's going to come up with the guarantees if it arises. Is it your understanding that the parties disagree on whether Livia's entitlement to call on the guarantees turns on whether the advance payments were in fact used in furtherance of Livia's interest under the is dispositive of what would happen if the guarantees are called for? My understanding of the guarantees is that the guarantees may be called on independent of any legal claim. So in other words, let's say that the contract was going swimmingly, all the work was being done, Livia theoretically could have called on the guarantees, and then there might well be subsequent claims that the parties could bring against themselves, probably between Al-Hani and Livia, the actual parties of the contract. So I think that that's a separate question. And what happened with the advance payments certainly might bear upon the outcome of that subsequent claim, but I don't think they bear on whether the guarantees themselves could be called. Are there any other questions? Thank you. Thank you. Thank you, Mr. Byrne. Mr. Perlow, we'll give you the two minutes that you've got to reserve for rebuttal. Your Honor, a couple of quick points. One, the counterclaim point, it doesn't resolve the issue of what the arbitrators didn't do because ultimately they understood that the issue was the advance payments. There's a work of investment treaty arbitrations where a contracting state can't bring a claim. Some of our tribunals have decided that they can't bring claims under the treaties, but either way, whether it had been styled as a counterclaim or a set off, the basis upon which the tribunal relied for not deciding the issue of the advance payments which, as Your Honor has focused on, is the status of the guarantees, that would have still troubled the tribunal, so it wouldn't have made a difference. What can they do other than just decide the claims as presented to them? You didn't bring an affirmative claim on this for that pot of money. You just sought an offset and they denied it. Again, Your Honor, I think it wouldn't have made a difference if it had been styled as a counterclaim affirmatively or as an affirmative defense in terms of a set off. The underlying concern about the status of the guarantees would have remained and the tribunal presumably would have not ruled on the issue just like it didn't in the set off. And that's important. I think Straubach concedes that these are two separate instruments, the contracts and the guarantees. You don't need to resolve the guarantees to determine liability. Yet it also acknowledges that if you resolve the liability question, then that would have a bearing on whether or not the guarantees could be called on. And before my time is up, Chief Judge, I will give you the sites that I promised you. You can look at JA 856. This is where we talk about the difference between the terms of the contract and in terms of the advance payments versus a set off. And also as an example, in our reply brief at 5 and I believe also 14, which is not in the record, but it's from the district court, we make the distinction as well. Thank you. Thank you, counsel. Thank you to both counsel. We'll take this case under submission.
judges: Srinivasan, Tatel, Katsas